**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

WAYNE V. WILLIAMS,                            *
     Plaintiff

                                      *      CIVIL ACTION NO. PWG-15-1002

v.
                                      *

WARDEN RICHARD E. MILLER,
                                      *

     Defendant

                                 ******

**MEMORANDUM OPINION**

Plaintiff Wayne V. Williams, who is incarcerated at the North Branch Correctional

Institution ("North Branch"), filed this self-represented complaint, alleging he has been denied

adequate medical treatment for his Hepatitis C infection ("HCV").  Compl. 3, ECF No. 1.

Defendant Warden Richard E. Miller has filed a motion to dismiss, or in the alterative, motion

for summary judgement.  *See* Def.'s Mot., ECF 13.  Williams has not responded,[1] and the time to

do so has passed.  *See* Loc. R. 102.1(a).  A hearing is unnecessary.  *See* Loc. R. 105.6.  Because

Williams has not shown how Defendant Miller is liable as the former Warden of North Branch

and because Williams's own behavior led to his alleged lack of medical treatment, Defendant's

motion will be granted.

I.       **BACKGROUND**

---

[1]      Pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on October 5, 2015, Williams was notified that Defendant had filed a dispositive motion, the granting of which could result in the dismissal of his action.  *See* ECF No. 14.  He was also informed that he was entitled to file materials in opposition to that motion within seventeen days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the court.  *Id.*

Williams states that the medical and psychology departments declined to treat his chronic HCV in retaliation for his filing prior complaints against them. Compl. 4.  Williams alleges that medical and psychology staff have falsely claimed that Williams declined treatment. *Id.*  As relief, Williams seeks an order directing the medical and psychology staff, as well as prison officials and administrators to allow him treatment. He also seeks monetary damages. *Id.* at 3.

Williams was transferred from Western Correctional Institution ("Western") to North Branch on June 12, 2014.  Med. Rec. 3, Def.'s Mot., Ex. 1.[2]  Williams was seen in the chronic care clinic on July 10, 2014, by a doctor, Dr. Joubert.  *Id.* at 4.  Dr. Joubert noted under reasons for visit: "HCV Patient biopsied 4/2011 with grade 1 state 1 with rebiopsy possible x 3 years. Patient recently cleared by Psych dept for anti viral therapy.  Pt. has no current GI/abd complaints." *Id.*

Williams was seen by medical staff on July 21, 2014, in order to obtain the necessary laboratory tests to prepare for a rebiopsy. *Id.* at 7.  An evaluation for treatment with interferon was scheduled for August 29, 2014; however Williams refused to attend and refused to sign the Release of Responsibility form ("Release Form").  *Id.* at 8.  The form was signed by Deidre Mull, and a correctional officer.  *Id.*

Williams was rescheduled for an evaluation regarding interferon treatment on September 4, 2014, but again refused to attend the appointment. *Id.* at 12.  At that time it was noted that Williams's refusal constituted the third refusal and Infection Control would be notified. *Id.*

Williams was evaluated by medical staff on March 16, 2015, due to an assault.  *Id.* at 13. It was noted at that time that Williams was scheduled for a six-month follow-up appointment with the psychology department but refused to attend. *Id.* at 13, 19.  On March 19, 2015,

---

[2]     Citations are to the document and page designations assigned by the Court's electronic docket.

Williams refused a psychiatry evaluation for evaluation of interferon treatment and again refused

to sign the Release Form. *Id.* at 15.

Williams filed several requests for administrative remedy ("Remedy Requests")

concerning his medical care. *See* Admin. Req., Def.'s Mot., Ex. 3, ECF 13-4.  As part of the

Remedy Requests investigation, Infection Control Nurse Rebecca Leatherman explained the

interruption in Williams's treatment as follows:

> This patient has refused his psych evaluation 3 times now; this sets him back for 6
> months.  He is aware of the process, as it was the same back when he was sent for
> his original biopsy.  If he does not pass the psych evaluation, he cannot proceed.
> He will be scheduled again for re-evaluation in Feb 2015. . . . This patient was
> cleared at [Western] and then was transferred to [North Branch].  At that time, we
> attempted to obtain his evaluation lab work, he refused.  We attempted again at
> the end of July and was [sic] successful.  At this point, he was scheduled for
> education with Dr. R and refused.  Due to his consistent refusals of various
> medical passes, the [Infection Control] department thought it best to have him
> evaluated again by psych and Dr[.] R agreed.  The evaluation is time sensitive and
> must be adhered to with the thoughts that if a patient cannot be adherent with all
> prep, then the likelihood of treatment adherence is very low.  This patient has
> refused every blood draw and visit for the past few months.  If he does not
> complete each step of the evaluation process, then he cannot move forward in the
> evaluation.  If he does not meet with psych and clear by January, we have to start
> the process over again, as the labs are only good for 6 months.  He is aware of this
> process; he went through it before.

*Id.* at 14, 16–17.

In response to a later filed Admin Request concerning lack of treatment, Nurse Travis

Barnhart explained Williams's treatment status:

> IC Department has made several attempts to start the work up process for panel
> presentation.  Patient was transferred from [Western] around 6/2014.  Patient was
> scheduled for bloodwork for presentation to Dr. Rufael, patient was a no show.
> Patient was scheduled for psych again because he needed a re-evaluation do [sic]
> to the time lapse between previous psych eval.  Patient was scheduled three times
> by psych and all no shows.  (Last scheduled appt. 9/4/14).  Patient was put on a 6
> month hold for re-evaluation.  In March of 2015 patient was due for re-evaluation,
> informed psych patient was do [sic].  Psych scheduled patient the second week of
> March once again patient was a no show.  IC Department informed of patients
> [sic] no show.  IC Dept scheduled patient the following Monday to educate the

patient about the HCV tx process.  Informed patient that he had to be evaluated by psych before he could move any further in the HCV tx process.  Patient also informed he would be rescheduled by psych in the next few days and he needed to show up. Patient was scheduled Wednesday for psych, two days after he had just spoke to IC department about the importance of being compliant with all appointments scheduled.  Patient was a no show again, [Release Form] stating patient went to rec instead of appointment.  Patient is currently on a 6 month hold and will be re-evaluated in June of 2015. Once again patient will be referred to Psych for HCV tx evaluation.  Patient needs to be compliant with all medical and psych passes to be approved for HCV tx.  Compliance is key for the success of the treatment and patient has been educated about this issue.

*Id.* at 46.

North Branch's current Warden, Frank Bishop, states that a warden acts "as the chief administrator of [North Branch], generally overseeing the administration of personnel and programs to ensure the safe, effective, and lawful functioning of [North Branch]."  Bishop Decl. ¶ 3, Def.'s Mot., Ex. 2, ECF No. 13-3.  The warden does not supervise medical personnel.  *Id.* Medical care of inmates is provided in the Maryland Division of Corrections by private health care contractors.  *Id.* ¶ 4.  Bishop states that "[i]t is beyond the scope of a Warden's job duties and responsibilities to perform any medical, dental or mental health treatment on an inmate, or to prescribe or deny a particular course of treatment."  *Id.*  Bishop further states that wardens "have no authority to dictate the type of medical treatment an inmate is to receive from a health care provider, or to influence the medical decision" of the provider.  *Id.*  Additionally, he states that wardens "rely upon the investigational findings of correctional staff to make [a] final determination" regarding Remedy Requests. *Id.* ¶ 7.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted."  *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012).  This rule's purpose "'is to test the sufficiency

of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).   To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6).   Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79.   *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").   Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2–3 (D. Md. Apr. 12, 2011).   If the documents that the Court considers exceeds this scope, the Court must treat the motion as a motion for summary judgment.   Fed. R. Civ. P. 12(d); *Syncrude*

*Canada Ltd. v. Highland Consulting Group, Inc.*, 916 F. Supp. 2d 620, 623 (D. Md. 2013).

Here, Defendant attaches voluminous exhibits to his filings.  *See* Def.'s Mot. These filings are integral to Williams's complaint in that they relate directly to his allegations that he is being denied adequate medical care.  Williams has not disputed the exhibits attached to Defendant's motion as he has failed to file any opposition.  Therefore, it is appropriate for me to consider these exhibits if I treated Defendant's motion as a motion to dismiss.

Alternatively, it also would be appropriate for me to consider these exhibits if I treated Defendant's motion as a motion for summary judgment.  Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013).  If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts.  *See Celotex v. Catrett*, 477 U.S. 317 (1986).  The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*  "In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party."  *Downing v. Baltimore City Bd. of School Comm'rs*, No. RDB 12-1047, 2015 WL 1186430, at *1 (D. Md. Mar. 13, 2015) (citing *Scott v. Harris*, 550 U.S. 372, 378

(2007)).

The Court may consider a broader array of documents when it treats a motion to dismiss *as a motion for summary judgment*, which it may do pursuant to Fed. R. Civ. P. 12(d). *See Syncrude Canada*, 916 F. Supp. 2d at 623. When the Court does so, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Notably, "the Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion." *Ridgell v. Astrue*, DKC-10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012). Thus, this requirement "can be satisfied when a party is 'aware that material outside the pleadings is before the court.'" *Walker v. Univ. of Md. Med. Sys. Corp.*, No. CCB-12-3151, 2013 WL 2370442, at *3 (D. Md. May 30, 2013) (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). Indeed, while the Court "clearly has an obligation to notify parties regarding any court-instituted changes in the pending proceedings, [it] does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). It is obvious that the Court may construe a motion that is styled as a "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment," as a motion for summary judgment. *Ridgell*, 2012 WL 707008, at *7; *see Laughlin*, 149 F.2d at 260–61. And, even if the motion is simply titled "Motion to Dismiss," as is not the case here, "the fact that defendant had attached other materials to its motion should have alerted plaintiff to the possibility" that the Court would treat the motion as a motion for summary judgment. *Ridgell*, 2012 WL 707008, at *7; *see Laughlin*, 149 F.2d at 260–61. Here, Defendant clearly indicates that its motion is a "motion to dismiss, or in the alternative, motion for summary judgment," Def.'s Mot. 1, and has attached eighty six pages of exhibits. Williams has had the opportunity to dispute these exhibits and has failed to do so. For these reasons, it is appropriate for me to treat

Defendant's motion as a motion for summary judgment and consider the exhibits attached to the Defendant's motion.

### III.   ANALYSIS

Williams alleges no personal involvement on the part of former Warden Miller in the denial of his medical care.  In fact, other than naming Miller in the caption of the complaint, Williams has stated no facts alleging improper conduct by Miller. *See* Compl.  Giving the complaint a liberal construction, it nevertheless fails.  It is well-established that the doctrine of respondeat superior does not apply in 42 U.S.C. § 1983 claims.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir.2004) (no respondeat superior liability under 42 U.S.C. § 1983).  Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  Supervisory liability under § 1983 must be supported with evidence

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

Here, former Warden Miller had no direct involvement with Williams's medical care. Miller was not responsible for supervising medical personnel and had no authority to dictate the type of medical treatment Williams was to receive.  Miller's sole responsibility was administration of the facility.  Williams's complaints regarding denial of medical care were

investigated, and it was determined that Williams's conduct was the sole basis for the interference with the continuation of his treatment.   Miller was entitled to rely on the investigatory findings of correctional staff who investigated Williams's claims.   Williams has failed to demonstrate liability on the part of Miller and as such Miller's motion will be granted.

## IV. CONCLUSION

For the reasons stated, Defendant's motion to dismiss, or in the alternative, motion for summary judgment will be granted.   A separate Order follows.


Dated: <u>June 10, 2016</u>                            <u>         /S/                </u>
                                                      Paul W. Grimm
                                                      United States District Judge